The opinion of the Court was delivered by
Dunkin', Ch.
The principal object of this bill seems to have been to obtain a revisal of the judgment of the Law Court of Appeals in Peeples vs. Smith, 8 Rich. 90. The bill was dismissed by the Chancellor for want of equity. The dissatisfaction of the appellants, as disclosed in their two first grounds, as well as in the argument before us, arises from the refusal of the Chancellor to interfere with the judgment of the Law Court, in a matter properly within their jurisdiction, and in which this Court concur entirely with the Chancellor.
It is objected in the sixth ground of appeal, that some of the plaintiffs who are among the heirs at law of the testator were not legally made parties in the proceedings before the Ordinary. They are said to be children of John Smith, deceased, and of George P. Smith, deceased who were children of the testator, both of whom died abroad. The names . of the children were not known, and the publication called upon them (so far as the Court can collect from the papers,) as heirs of George L. Smith, deceased, without setting forth their names. Many of the heirs appeared and successfully contested the probate of the will before the Ordinary, although his judgment was subsequently reversed. It did not appear in any way that any of the plaintiffs were ignorant of the litigation during its progress through the several tribunals. *48 In cases of this character, the Court exacts a reasonable compliance with the provisions of the statute, and this is well illustrated by the language of the Court of Appeals in Cruger vs. Daniel, McMul. Eq. 189. Chancellor Harper says, “ It “ would be the duty of the Court, upon its own motion, in “ decreeing upon the rights of Eerrie, to inquire if he were “ properly made a party. As I understand, the publication “ was made in pursuance of the Act of Assembly, requiring “John Eerrie, or if he should be dead, his heirs, to 'appear. “ It was objected that from his long absence without being “ heard of, he must be presumed to be dead, and that his heirs “ should be required to appear by name. If it is as alleged, “ he has been absent from the State for fifty years, and his “ heirs are unknown, this would be impossible. It seems to “ me to be a substantial and the only practicable mode of “ complying with the directions of the Act. I do not perceive that the heirs would receive any greater benefit if “ they were named in the advertisement requiring them to “ answer.”
But the plaintiffs set forth in their bill, that part of the estate of their ancestor Greorge L. Smith, deceased, consisted of a valuable plantation in Union district, now in possession of the defendant John W. Sartar, under an alleged conveyance from his co-defendants. It is also conceded in the pleadings, that the plaintiffs are among the heirs at law of Greorge L. Smith, deceased. Among the various objects of the prayer of the bill the plaintiffs ask specially for a writ of partition. The fourth and fifth grounds submit that the proceedings on the appeal from the Ordinary, constitute no bar to the heirs at law in relation to the real estate, that the bill should have been retained for the purpose of partition of the real estate, and an issue devisavit vel non ordered by the Chancellor. Mr. Justice Williams says, that if an instrument be testamentary, and is to operate on personal estate, probate must be obtained in the Ecclesiastical Court. Where, how *49 ever, a will clearly respects lands only, and no personal property, it ought not to be proved in the Spiritual Court. “But “ if a will is a mixed will, concerning both lands and goods, “it must be proved entirely in the Spiritual Court, yet the “probate will not prejudice the heirs, inasmuch as it will not “ be evidence of the will as to the land; nor will the exami- “ nation of the witnesses in the Ecclesiastical Court be evidence “ in the Court o'f Common Law.” 1 "Williams’ Ex’ors, 321. So Mr Jarman states that, except as to the personalty, the probate by the Ecclesiastical Court is wholly inoperative and void, “ that the validity of wills of real estate is solely cognizable by Courts of Law, in the ordinary forms of suit.” 1 Jarman, 212.
The principle has been often recognized in our own Courts. Thus in Crosland vs. Murdock, 4 McC. 217, Judge Nott says, “the Ordinary has no jurisdiction over the lands; and it follows as a consequence, that his judgment is not conclusive, “ so far as the real estate is concerned. If he allows the will, “ his probate is not evidence against the heir at law. The “original must be produced and proved. If he rejects it, “the devisee, for the same cause, will be permitted to set it “ up in opposition to the heir.” Then it was urged that the judgment of the Ordinary had been affirmed, on appeal, by a jury. “But” continued that eminent judge, “it must be “ recollected that the powers of the Court of Common Pleas, “ in respect to this matter is entirely appellate, and is con- “ ferred solely with the view of controlling the Ordinary, and “is only authoritative so far as to put him right when he has “ erred.” He further remarks, that although by the practice of the Courts in this State the trial is gone into de novo as regards the object, the power is appellate, and the judgment is that of the Ordinary as corrected by the appellate tribunal.
It was contended that the effect of probate in the Court of Ordinary was altered by the Act of 1839, (11 Stat. 39.) It may have been in the power of the Legislature thus to have *50 ■extended the jurisdiction of the Court of Ordinary, as has been done in some other of the States of this confederacy. But in such case a change of so grave a character, is not left to inference or doubtful interpretation. In several of the Eastern States it is expressly provided by statute that “ the “ probate of a will devising real estate, shall be conclusive as “ to the due execution of the will in like manner as it is of a will of personal estate.” But the Act of 1839, purports to confer no new jurisdiction in this respect, on the Court of Ordinary, but only regulates the practice as already existing. The effect of probate by the Ordinary is not changed; and the consequences of such implication are too grave to be lightly adopted. By the English law, the heir may pursue .his claim to the real estate, as often as he has the inclination and the means. In this State he is restricted to two suits. But if the probate of the will by the Ordinary is deemed conclusive, his right is still more restricted, and, unless he appeal within a limited time, he may be effectually deprived of his freehold without the judgment of his peers, or a new provision be engrafted on the statute of limitations. The probate in common form without citing any of the parties in interest is (by the 11th section) declared to be good unless, within four years next after such probate, some person shall give notice that he requires probate in solemn form. But in Cannon vs. Setzler, 6 Rich. 471, (decided in 1853) which was the case of a mixed will, the Court of Errors clearly recognize the well settled principle, that the probate of the Ordinary had no effect in relation to the real estate.
Then it has been suggested that the Act of 1823, author-ising office copies of wills to be given in evidence in certain cases, may have made a difference. But that Act does not purport to alter the effect of the probate of the Ordinary. Previous to that Act in all actions of trespass to try title, whether in England or in this country, if a will constituted any part of the plaintiff’s chain of title it was necessary to *51 produce the original -will, and for this purpose to require the attendance of the officer who had the custody of the will. As is said in 1 Bur. 429, every several devisee was required to make out his title in a distinct cause, and de novo against every new party — and so of one devisee against several trespassers — and so of several defendants claiming title under a devisee.' In all these cases it was necessary to produce the original will. Sometimes the will was given up by the ordinary upon large security being given, and in England when he refused an order was sometimes made by the Court of Chancery to that effect — although Lord Eldon, who had made several such orders, once remarked, he did not see how he could proceed if the custodian refused to surrender the instrument. To remedy this inconvenience in cases where there was no controversy as to the validity of the will but it was offered collaterally in evidence, or ’as part of a chain of title of plaintiff or defendant, the Act of 1828 declares, that exemplication of wills under the hand of the Ordinary and seal of the Court in which such wills may have been admitted to probate, or under the hand and seal of any other officer who has legal possession of the same, shall be admissible in evidence in any of the Courts of law or equity in this State, whether the same may regard the title to real or personal property. At one time the office of the. Secretary of State was the place of record of wills, and by this Act a certified copy from that office is placed on the same footing as a copy from the Ordinary’s office. But it was manifestly intended to apply when the evidence was collateral, and not where the validity of the will was the issue presented, and so it has always been regarded.
Crossland vs. Murdock, was decided in 1827, four years after the passage of that Act, in which the Court declare that the probate by the Ordinary is no evidence against the heir. The same doctrine was announced in the recent case of Cannon vs. Setzler, and in Taylor vs. Taylor, decided in 1845, 1 Rich. *52 533, it is repeatedly stated by the judges that devises are not established by.probate of the Ordinary. To give to the Act of 1823 the operation suggested, would require a construction not before intimated, or which has been repudiated by all our subsequent adjudications.
It is ordered and decreed that the appellants’ sixth ground of appeal be sustained; that the bill be retained for the purpose of partition of the real estate in case the plaintiffs should prove themselves entitled to such relief, and that the cause be remanded that the plaintiffs may proceed as they shall be advised. But as all the principal matters of contes-tation have been determined against the plaintiffs, and in this respect the Court is well satisfied with the judgment of the Chancellor, it is not proposed to interfere with the effect of his adjudication in relation to the costs. Up to the time of the Circuit decree the costs must be paid by the plaintiffs.
Johnston, Dargan, and Wardlaw, CO., concurred.

Decree modified.